**E-FILED**
Tuesday, 18 October, 2005  04:56:07 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-20015 |
| | ) | |
| MARSHALL BLANCHARD, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANT'S PRE-TRIAL MOTIONS

The United States of America, by its attorneys, Jan Paul Miller, United States Attorney for the Central District of Illinois, and Timothy A. Bass, Assistant United States Attorney, respectfully submits its consolidated response to the defendant's pre-trial motions. The government states as follows:

## FACTS/PROCEDURAL HISTORY

1.      The defendant is charged in the indictment with knowingly manufacturing methamphetamine on or about December 30, 2004, in violation of 21 U.S.C. § 841(a)(1), and felon in possession of a firearm on or about December 30, 2004, in violation of 18 U.S.C. § 922(g)(1).

2.      In 1978, the defendant was convicted in Illinois of the felony offense of burglary.

3.      On December 29, 2004, a Roberts, Illinois law enforcement officer applied for a state search warrant for the defendant's residence in Roberts. In support of that

application, the officer swore to an affidavit. In the affidavit, the officer advised that he had met with the ex-wife of the defendant, that the ex-wife had provided a computer disk which had been provided to her by Marshall Blanchard, Jr. the son of the defendant and his ex-wife, and that the son lived with the defendant at his Roberts residence. The officer further advised that the photographs depicted two plastic containers containing a white/powdery substance and a plastic bag that appeared to contain a similar substance. The officer also advised that Marshall, Jr. had informed his mother that there was a strong chemical/ammonia odor in the same area. Marshall, Jr. also advised that two men, whom he did not know, had come to the residence on the previous evening, and that they and the defendant had gone upstairs for an extended period of time.

4.      The officer further advised that Marshall, Jr. had obtained a sample of the substance from one of the containers and provided it to his mother, who provided the sample to the officer. The officer advised that the substance field-tested positive for ephedrine, a precursor for the production of methamphetamine. Finally, the officer advised that the defendant's ex-wife had stated that her daughter had been taken to the hospital the previous month after experiencing seizures and tested positive for the presence of methamphetamine, and that the daughter had been frequenting the defendant's residence.

5.      Based on the affidavit of the officer, a Ford County, Illinois judge issued a search warrant for the defendant's residence. During the search, officers seized

methamphetamine and numerous items directly associated with its manufacture. Officers also seized several firearms.

6.      Following the search of the Roberts residence, officers obtained an additional search warrant for a second residence of the defendant in Paxton, Illinois. During a search of that residence, officers seized a substantial number of additional items associated with the manufacture of methamphetamine.

7.      Following the searches of the defendant's residences, the defendant was charged in Ford County, Illinois with the manufacture of a controlled substance and a warrant was issued for his arrest. The defendant later fled to Tennessee to avoid the charges and was ultimately arrested in Tennessee on January 29, 2004, and returned to Illinois. At the time of this arrest, the defendant had burns on his face that are consistent with burns associated with manufacture of methamphetamine.

8.      Following the defendant's return to Illinois (and as reflected in the defendant's filings in this case on September 15, 2005), a preliminary hearing was conducted in Ford County on March 10, 2005.

9.      On April 8, 2005, the defendant was indicted in the Central District of Illinois and charged with the above-mentioned offenses. A federal warrant was issued for the defendant's arrest.

10.     On April 11, 2005, ATF Special Agent Dennis Fritzsche and a Roberts police officer arrested the defendant pursuant to the federal warrant. At the time of his arrest, officers twice attempted to advise the defendant of his rights. On each occasion,

the defendant stated that he was aware of his rights. The defendant also advised that he had an attorney that was representing him on the state charges. Although the defendant did not invoke his right to counsel or request the presence of counsel at the time of his arrest, the officers offered the defendant the opportunity to speak with his state attorney, and the defendant was allowed to speak with that attorney by telephone.

11.     After the defendant was allowed to speak with his state attorney, Special Agent Fritzsche again attempted to advise the defendant of his rights, and the defendant again stated that he was aware of his rights. The defendant then proceeded to engage in a conversation with Special Agent Fritzsche, during which he, among other things, confessed to possession of the firearms.

12.     The following day, on April 12, 2005, Special Agent Fritzsche transported the defendant to Urbana, Illinois for an initial appearance on the indictment. During the drive to Urbana, the defendant made several unsolicited statements concerning the offenses charged.

13.     On September 15, 2005, the defendant filed a motion for leave to file pre-trial motions. Attached to that motion were various reports concerning the offenses charged, copies of the search warrants, a report detailing the defendant's statements to law enforcement officers, and a transcript of the hearing in state court that was conducted prior to the instant indictment.

- 4 -

**ARGUMENT**

14.     The defendant has filed several pre-trial motions. In his motions, the defendant repeatedly makes reference to the finding of no probable cause in a state court hearing. Such fact, however, is irrelevant to the instant federal criminal case, since federal law is controlling. United States v. Wilson, 169 F.3d 418, 423 (7th Cir. 1999). The government's response to each of the defendant's motions is as follows.

**Motions to Suppress**

**Motion to Suppress Statements**

15.     The defendant has filed a motion to suppress the statements he made to Special Agent Fritzsche at the time of his arrest. Since the defendant never invoked his right to remain silent or his right to counsel, such motion is meritless.

16.     In Miranda v. Arizona, 384 U.S. 436, 467 (1966), the Supreme Court held that under the Fifth Amendment, certain warnings must be given to a suspect prior to in-custody interrogation. Once a suspect invokes his Fifth Amendment right to counsel or right to remain silent, law enforcement officers are required to cease any interrogation unless the suspect initiates further communication. Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). United States v. Westbrook, 125 F.3d 996, 1005 (7th Cir. 1997); United States v. Banks, 78 F.3d 1190, (7th Cir. 1996). However, a suspect's invocation of his right to counsel or to remain silent must be "unequivocal." Banks, 78 F.3d at 1198; see also Davis v. United States, 512 U.S. 452, 459-60 (1994); United States v. McKinley, 84 F.3d 904, 908 (7th Cir. 1996). "Volunteered statements of any kind are not

barred by the Fifth Amendment." United States v. Briggs, 273 F.3d 737, 740 (7th Cir.

2001)  (quoting Miranda, 384 U.S. at 478); see also United States v. Westbrook, 125 F.3d

996, 1002 (7th Cir. 1997); United States v. Jackson, 189 F.3d 502, 511 (7th Cir. 1999);

United States v. Krankel, 164 F.3d 1046, 1050-51 (7th Cir. 1998).

17.    In this case, at the time of the defendant's arrest, the arresting officers

repeatedly attempted to advise the defendant of his rights, the defendant stated he was

aware of his rights, and he voluntarily agreed to speak with the officers. At no time did

the defendant unequivocally invoke his right to remain silent or his right to an attorney.

In addition, the day after his arrest, the defendant volunteered statements to the

officers. Accordingly, the defendant waived his Fifth Amendment right to remain silent

and his Fifth and Sixth Amendment rights to counsel. See United States v. Spruill, 296

F.3d 580, 585-90 (7th Cir. 2002). The government agrees, however, that the defendant's

motion raises a factual issue that requires an evidentiary hearing.

**Motion to Suppress Based on Lack of Probable Cause for Search Warrant**

18.    The defendant has further filed a motion to suppress the evidence seized

from his Roberts residence. Given that a search warrant was issued for the search of that

residence that was based on probable cause and that the defendant has not established

the absence of the officers' good-faith reliance on the warrant, the defendant's motion is

meritless.

19.    An affidavit in support of a search warrant establishes probable cause

when it "sets forth facts sufficient to induce a reasonable prudent person to believe that

a search thereof will uncover evidence of a crime." United States v. McNeese, 901 F.2d 585, 592 (7th Cir. 1990) (citation omitted). Whether probable cause has been established depends on the facts of each individual case. Ornelas v. United States, 517 U.S. 690, 696 (1996). The inquiry requires a court to examine the "totality of the circumstances." Illinois v. Gates, 462 U.S. 213, 230-39 (1983).

20.    A judge's task in deciding whether to issue a search warrant as "simply to make a practical, common-sense decision, whether given all circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Lloyd, 71 F.3d 1256, 1263 (7th Cir. 1995) (quoting Gates, 462 U.S. at 238). It is presumed that an affidavit supporting a warrant is valid. Franks v. Delaware, 438 U.S. 154, 171 (1978). Therefore, "[a]lthough in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area would be largely determined by the preference to be accorded to warrants." United States v. Ventresca, 380 U.S. 102, 109 (1965).

21.    The task for this Court, or any reviewing court, is "to ensure that the [issuing judge] had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Gates, 462 U.S. at 238-39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). In exercising such review, the Supreme Court has instructed as follows:

> A magistrate's determination of probable cause should be paid great
> deference by reviewing courts.  A grudging or negative attitude by
> reviewing courts toward warrants is inconsistent with the Fourth
> Amendment's strong preference for searches conducted pursuant to a
> warrant and courts should not invalidate . . . warrant[s] by interpreting
> affidavit[s] in a hypertechnical, rather than a commonsense, manner.

Gates, 462 U.S. at 236 (internal citations and quotations omitted).

22.    With these principles in mind, it is clear that the facts set forth in the

complaint for search warrant sufficiently established probable cause for the issuance of

the warrant to search the defendant's Roberts residence. In his affidavit in support of

the warrant, the officer provided information that was obtained from the defendant's

ex-wife, who obtained her information from the defendant's son, who was living at the

defendant's residence. That information included photographs of the defendant's

residence and a sample of a substance obtained from the residence that tested positive

for ephedrine, a precursor chemical for the production of methamphetamine. Such

information was more than sufficient to establish probable cause to believe that the

residence contained evidence of the manufacture of methamphetamine.

23.    Even assuming that the search warrant was not supported by probable

cause, the defendant's argument is doomed from the outset because he has not argued,

let alone established, that the officers executing the warrant acted in the absence of good

faith reliance on the warrant. United States v. Leon, 468 U.S. 897 (1984).

24.    In Leon, the Supreme Court held that the Fourth Amendment's

exclusionary rule does not apply to evidence obtained by police officers acting in

reasonable reliance on a search warrant issued by a detached and neutral magistrate.

468 U.S. at 913. In so holding, the Court stated:

> In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

Id. at 926.

25.     Here, the defendant does not claim that state court judge abandoned his detached and neutral role as the issuing judge. Nor has the defendant established that the judge was misled by information in the complaint that the police officer knew was false or would have known except for his reckless disregard for the truth. It was therefore objectively reasonable for the police officers to rely in good faith on the validity of the search warrant. See, e.g., United States v. Mykytiuk, 402 F.3d 773, 777-79 (7th Cir. 2005) (suppression not appropriate because officers acted in good faith).

26.     The defendant also makes the unsupported assertion that the officers may have relied on false information to support the search warrant application, and that he cannot demonstrate that falsity until discovery is provided. This unsupported assertion is frivolous. First, as reflected in the defendant's own filings, he has received discovery, including the relevant police reports relating to the searches of his residence, the search warrants and supporting affidavits. Accordingly, the defendant's assertion that he has not received discovery is plainly false. Second, to be entitled to a hearing under Franks v. Delaware, 438 U.S. 154, 98 (1978) based on an officer's reliance on false information in

support of a search warrant, a defendant must make a "substantial preliminary showing that the affiant has intentionally or recklessly included a false statement in the affidavit, and that the false statement is material in order to find probable cause." United States v. Souffront, 338 F.3d 809, 822 (7th Cir. 2003). "The defendant must offer direct evidence of the affiant's state of mind or inferential evidence that the affiant had obvious reasons for omitting facts in order to prove deliberate falsehood or reckless disregard." Id. This is a difficult burden for a defendant to meet. See United States v. Swanson, 210 F.3d 788, 789-90 (7th Cir. 2000).

27.    Here, the defendant has not made, or even attempted to make, a showing of reliance on false information. His motion to suppress is therefore meritless.

### Motion To Suppress Firearms

28.    The defendant further seeks to suppress evidence of the firearms seized from his residence because the search warrant did not authorize the seizure of firearms. Since the firearms were found in plain view and because their incriminating nature was immediately apparent, due to the defendant's status as a felon and the connection between firearms and drug trafficking, this motion to suppress is also without merit.

29.    It is well settled that "[a]n officer executing a search warrant may seize: (i) items named in the warrant; and (ii) evidence that, although not described in the warrant, is subject to seizure under the plain view doctrine." Russell v. Harms, 397 F.3d 458, 465 (7th Cir. 2005); see Coolidge v. New Hampshire, 403 U.S. 443, 465-66 (1971). "The plain view doctrine applies if the officer has a legal right to be in the place from

where he sees the object subject to seizure, a lawful right of access to the object itself, and if the object's incriminating nature is 'immediately apparent.'" Russell, 397 F.3d at 465. "The incriminating nature of an object is 'immediately apparent' if, under the circumstances, the officer has probable cause to believe that the item is linked to criminal activity." Id.  United States v. Bruce, 109 F.3d 323, 328 (7th Cir.1997).

30.    In this case, law enforcement agents executed a valid search warrant for the seizure of evidence relating to drugs, namely, methamphetamine. The agents were therefore justified in searching the entire area of the premises in which such evidence might be found. United States v. Ross, 456 U.S. 798, 820-21 (1982). During that search, the officers seized several firearms that were in plain view. Moreover, it is well settled in this Circuit "that guns are 'tools of the drug trade.'" United States v. Bryant, 420 F.3d 652, 657 (7th Cir. 2005); see also Young v. United States, 124 F.3d 794, 801-02 (7th Cir. 1997) ("The 'relation' between drugs and gun found in the same cache is too clear for comment"). Finally, the defendant was a convicted felon, and he was therefore prohibited from possessing firearms. Accordingly, the incriminating nature of the firearms was readily apparent to the police officers. See, e.g., United States v. Cooper, 19 F.3d 1154, 1163 (7th Cir. 1994) (an empty ammunition box found in a search for drugs; "[e]vidence that [the defendant] at one time possessed .380 caliber ammunition is incriminating in the same way that his possession of the weapons was incriminating"); United States v. Reed, 726 F.2d 339, 344 (7th Cir. 1984) (seizure of weapons "did not exceed scope of valid search warrant as police could reasonably believe that the guns

were involved in cocaine dealing as evidenced by the items discovered during the search"). Thus, the police officers' seizure of the firearms was appropriate.

**Motion To Dismiss**

31.    In a two-paragraph motion, the defendant makes the conclusory and unsupported argument that the felon-in-possession charge in the indictment should be dismissed. He appears to argue that following his 1978 Illinois felony conviction for burglary, his civil rights were restored by operation of law, and that he is therefore not a convicted felon. The law in this Circuit, however, squarely forecloses that claim.

32.    Title 18, United States Code, Section 921(a)(20) defines convictions countable under § 922(g) as follows:

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

33.    In Melvin v. United States, 78 F.3d 327 (7th Cir. 1996), the defendant claimed that certain of his underlying Illinois convictions were not countable due to the restoration of his civil rights. Like the defendant here, Melvin claimed his rights were restored by operation of law rather than a specific document restoring his rights. The Seventh Circuit held that in the situation where civil rights were restored "by operation of a state statute rather than by an individualized document granting a pardon or

- 12 -

restoring rights, . . . the first sentence of section 921(a)(20) applies." Melvin, 78 F.3d at

329. Therefore, the issue is whether Illinois considers the defendant a convicted felon.

34.     Like the defendant in Melvin, Illinois law clearly considers the defendant

convicted because his 1978 burglary conviction can serve as a predicate offense under

Illinois' felon in possession law, which clearly forbids all convicted felons from

possessing firearms, regardless of whether they were convicted before or after 1984 (the

enactment date of the law). Melvin, 78 F.3d at 330; People v. McCrimmon, 501 N.E.2d

334, 337 (Ill.App.Ct. 1986); see also United States v. Walden, 146 F.3d 487, 492 (7th Cir.

1998)  ("We see no reason to reevaluate our reasoning in Melvin"). Thus, the

defendant's conclusory motion is meritless.

### Motion for Severance

35.     The defendant has filed a motion to sever the methamphetamine and

firearm counts. Contrary to this motion, the firearm and drug evidence was seized from

the same location, the offenses charged are largely based on the same evidence, and it is

well settled that firearms are tools of the drug trade. Accordingly, a motion to sever is

inappropriate.

36.     Rule 8 of the Federal Rules of Criminal Procedure provides:

> The indictment or information may charge a defendant in separate counts
> with 2 or more offenses if the offenses charged--whether felonies or
> misdemeanors or both--are of the same or similar character, or are based
> on the same act or transaction, or are connected with or constitute parts of
> a common scheme or plan..

- 13 -

Fed.R.Crim.P. 8(a). Rule 14 provides that if it appears that the defendant is prejudiced from a joinder of offenses, the trial court may order separate trials on different counts of an indictment. Fed.R.Crim.P. 14.

37.    It is well established in this Circuit that "drug trafficking and firearm counts are presumptively properly joined because possession of firearms and drug trafficking are closely related." United States v. Stokes, 211 F.3d 1039, 1042 (7th Cir. 2000); see also United States v. Pigee, 197 F.3d 879, 891 (7th Cir.1999); Young v. United States, 124 F.3d 794, 801-02 (7th Cir. 1997) ("The 'relation' between drugs and gun found in the same cache is too clear for comment"). "Moreover, courts also have a strong interest in favor of joinder of offenses; in particular, joinder of offenses reduces the waste of precious judicial and prosecutorial time in the already overburdened federal judicial system and reduces the burdens on witnesses from testifying at multiple trials." Stokes, 211 F.3d at 1042. Finally, there is no prejudicial joinder if the joined counts involve evidence that is "mutually admissible" in separate trials. See, e.g., United States v. Traeger, 289 F.3d 461, 473 (7th Cir. 2002) (ruling that "mutually admissible" evidence--i.e., evidence that is admissible for either charge--is not prejudicial).

38.    In this case, the drug and firearm counts were found in the same location, namely, the defendant's residence. Given this fact, and the fact that firearms are "tools of the drug trade," the counts are properly joined. See, e.g., Stokes, 211 F.3d at 1042; United States v. Windom, 19 F.3d 1190, 1197 (7th Cir. 1994) ("the gun and the drugs were found in the same search"; "Therefore, the court rules that the district court did

not err in joining [the] gun offense with the narcotics charges"). Although the defendant attempts to argue that he is not charged with drug trafficking, such argument is without merit. The manufacture of methamphetamine inherently involves drug trafficking. Moreover, the government's evidence will establish that the defendant manufactured methamphetamine and provided it to others. Accordingly, his motion to sever is meritless.

### Motion for Bill of Particulars

39.    The defendant has further filed a motion for bill of particulars. In the motion, however, the defendant is merely seeking evidentiary details of the government's case. His motion is therefore inappropriate.

40.    The law in the Seventh Circuit governing the standard for granting a motion for bill of particulars is well established. "The test for whether a bill of particulars is necessary is whether the indictment sets forth the elements of the <u>offense charged</u> and sufficiently apprises the defendant of the <u>charges</u> to enable him to prepare for trial." <u>United States v. Kendall</u>, 665 F.2d 126, 134 (7th Cir. 1981) (emphasis in original) (quotation omitted). It is not to be used as a discovery tool. Just as a defendant is not entitled to know the details of the evidence the government will seek to introduce, he is also not "entitled to know for what purpose the government will seek to have it admitted." <u>Id.</u> "Accordingly, a bill of particulars is necessary only where the indictment does not sufficiently apprise the defendant of the charges to enable h[im] to prepare for

trial." <u>United States v. Esteves</u>, 886 F. Supp. 645, 646 (N.D. Ill. 1995) (citing <u>United States v. Canino</u>, 949 F.2d 928, 949 (7th Cir. 1991)).

41.    "In deciding whether a bill of particulars is appropriate, the court may consider the complexity of the charges, the clarity of the indictment, and the degree of discovery available to the defense absent a bill." <u>Id.</u> A defendant is not entitled to statements of witnesses, <u>see</u> 18 U.S.C. §3500, the identity of unindicted co-conspirators, <u>see</u>, <u>e.g.</u>, <u>Rogers v. United States</u>, 340 U.S. 367, 375 (1951) ("at least two persons are required to constitute a conspiracy, but the identity of the other members of the conspiracy is not needed, inasmuch as one person can be convicted of conspiring with persons whose names are unknown"); <u>United States v. Kramer</u>, 711 F.2d 789, 796 (7th Cir.) ("no requirement that a conspiracy indictment identify uncharged co-conspirators"); <u>Esteves</u>, 886 F.Supp. at 646, or a list of the government's witnesses, <u>United States v. Johnson</u>, 504 F.2d 622, 628 (7th Cir. 1974) ("A bill of particulars cannot be used 'to obtain a list of the government's witnesses . . . or evidentiary detail"); <u>United States v. Cansler</u>, 419 F.2d 952, 954 (7th Cir. 1969) ("purpose of the bill is to adequately inform a defendant as to the indictment against him and is not to supply the defendant with a list of the government's witnesses"), or the evidentiary details of the government's case or its purpose for the admission of evidence. <u>Kendall</u>, 665 F.2d at 135.


42.    In short, as the Seventh Circuit has repeatedly stated, "the defendant's constitutional right is to know the offense with which he is charged, not the details of

- 16 -

how it will be proved." Id.; United States v. Richardson, 130 F.3d 765, 776 (7th Cir. 1997)

(defendant "is only entitled to know the offense with which he is charged, not all the

details of how it will be proved").

43.    In this case, the defendant is charged with manufacturing

methamphetamine and possession of a firearm by a convicted felon. These offenses are

not complex, and both offenses are alleged to have occurred on or about December 30,

2004. Accordingly, the indictment more than adequately informs the defendant of the

offense charged, the time frame in which the offenses took place, and citation to the

relevant statutes. Moreover, "[t]he entire record in this proceeding is admissible in any

subsequent criminal proceeding to prove that [the] defendant has already been

prosecuted for the same offense." Kramer, 711 F.2d at 796.

44.    The defendant does not complain that the indictment does not meet these

criteria, but rather request evidentiary details of the government's case. That type of

information, however, is not appropriate for a bill of particulars. Accordingly, the

defendant's motion should be denied.

45.    In addition, when considering whether a bill of particulars is required, "it

is proper to look to post-indictment discovery." United States v. Glecier, 923 F.2d 496,

502 (7th Cir. 1990). A bill of particulars is not required "when information necessary for

a defendant's defense can be obtained through some other satisfactory form." Canino,

949 F.2d at 949 (quotation omitted).

46.    In this case, as reflected in the defendant's own filings with this Court on September 15, 2005, the defendant has been provided with extensive discovery, including reports relating to the searches of his residences, the search warrants and supporting documents, and a report of his statements to law enforcement officers. Moreover, since the defendant was initially charged in state court, he has already had the unique opportunity of conducting a preliminary hearing in state court concerning the matters now charged in the instant federal indictment. Given the information and discovery already provided to the defendant, a bill of particulars is simply not required.

### Motion for Grand Jury Transcript

47.    The defendant has filed a motion asking that this Court order the government to produce the grand jury testimony of his son. This motion is plainly precluded by 18 U.S.C. § 3500.

48.    Title 18, United States Code, Section 3500(b) provides in pertinent part:

> After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . .

see also Fed.R.Crim.P. 26.2.

49.    In addition, Rule 16(a)(2) of the Federal Rules of Criminal Procedure provides:

> Except as Rule 16(a)(1) provides otherwise, this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government

- 18 -

agent in connection with investigating or prosecuting the
case. Nor does this rule authorize the discovery or inspection
of statements made by prospective government witnesses
except as provided in 18 U.S.C. § 3500.

50.     In 1976, the Seventh Circuit unequivocally stated:

The law in this circuit is clear that the Jencks Act forbids a
district court from ordering the production of statements of
Government witnesses, even if they contain statements
made by defendants, prior to the time the Government
witnesses testify.

United States v. Harris, 542 F.2d 1283, 1291 (7th Cir. 1976); see also United States v.

Feinberg, 502 F.2d 1180, 1182-83 (7th Cir. 1974).

51.     In this case, one of the government's witnesses is the defendant's son, who

provided information that led to the search of the defendant's residence and who has

testified before the grand jury. Although the defendant has already received much of

the Jencks material in this case in advance of trial, the government has withheld

disclosure of the grand jury transcript of the defendant's son to "protect[] the integrity

of the Government's evidence[,]" United States v. Feinberg, 502 F.2d 1180, 1182 (7th Cir.

1974), and to minimize any potential for the defendant to attempt to influence his son's

testimony.

52.     While ignoring § 3500, the defendant has filed a motion asking this Court

to order the government to provide the transcript prior to trial. As § 3500 and Harris

make clear, however, such a request is contrary to settled law. Accordingly, the

defendant's motion should be denied.

- 19 -

## Motion Regarding Expert Witnesses

53.     The defendant has filed a motion for disclosure of expert testimony that the government intends to introduce at trial. The government has no objection to this motion. The government has previously provided disclosure of expert testimony it intends to introduce at trial. In addition, the government will fully comply with Rule 16(a) of the Federal Rules of Criminal Procedure concerning the disclosure of any additional expert testimony that will be presented in the absence of any stipulations with the defendant.

## Motion for Production of List of Witnesses

54.      The defendant has filed a motion requesting a list of the government's witnesses.

55.     "It is well-settled that the Constitution does not require pretrial disclosure of prosecution witnesses." United States v. Edwards, 47 F.3d 841, 843 (7th Cir. 1995). "Nor does Fed.R.Crim.P. 16, which governs discovery in criminal cases, require such disclosure." A district court, however, has the authority to order disclosure of witnesses as part of its "inherent power to assure the proper and orderly administration of criminal justice." Id.

56.     This Court has a standing practice of requiring the exchange of witness lists by the government and the defendant at the final pretrial conference. The government will provide a list of its witnesses as part of this reciprocal exchange at the final pretrial conference. Accordingly, the defendant's motion should be denied.

## Motion for Miscellaneous Relief

57.     Finally, the defendant has filed a motion for miscellaneous relief, asking that this Court conduct an evidentiary hearing to allow the defendant to attempt to search for impeachment information concerning government witnesses. This unsupported motion is nothing more than a request for this Court to conduct a fishing expedition. It is therefore inappropriate and should be denied.

58.     Under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), "the government must disclose evidence favorable to the defendant that, if suppressed, would deprive the accused of a fair trial." <u>United States v. Beverly</u>, 913 F.2d 337, 349 (7th Cir. 1990) (citing <u>Brady</u>). "This duty extends to exculpatory evidence and to evidence that might be used to impeach the government's witnesses." <u>Id.</u> However, "<u>Brady</u> does not grant criminal defendants unfettered access to government files." <u>United States v. Phillips</u>, 854 F.2d 273, 277 (7th Cir. 1988). Indeed, "a <u>Brady</u> request does not entitle a criminal defendant to embark upon an unwarranted fishing expedition through government files, nor does it mandate that a trial judge conduct an in camera inspection of the government's files in every case." <u>United States v. Mitchell</u>, 178 F.3d 904, 908-09 (7th Cir. 1999). "A due process standard which is satisfied by mere speculation would convert <u>Brady</u> into a discovery device and impose an undue burden upon the district court." <u>United States v. Navarro</u>, 737 F.2d 625, 631 (7th Cir. 1984). Thus, a defendant is not entitled to review all of the government's files in search of exculpatory material. Rather, "counsel must be satisfied with the representations of the prosecutor, fortified by judicial inspection in

close cases." <u>United States v. Danovaro</u>, 877 F.2d 583, 589 (7th Cir. 1989). Moreover, the

Seventh Circuit has repeatedly "held that a defendant is not entitled to discovery

material under <u>Brady</u> without even a hint that impeaching material [i]s contained

therein  . . . or where the defendant has made no showing at all by affidavits or

otherwise that any evidence [i]s suppressed by the government." <u>United States v.</u>

<u>Morris</u>, 957 F.2d 1391, 1402-03 (7th Cir. 1992) (quotation omitted).

59.    In addition, "there is nothing in <u>Brady</u> or [<u>United States v. Agurs</u>, 427 U.S.

97 (1976),] to require that such disclosures be made before trial . . ." <u>United States v.</u>

<u>Allain</u>, 671 F.2d 248, 255 (7th Cir. 1982) (quotation omitted). Rather, "the standard to be

applied in determining whether delay in disclosure violates due process is whether the

delay prevented defendant from receiving a fair trial." <u>Id.</u> at 254-55. "As long as

ultimate disclosure is made before it is too late for the defendant[] to make use of any

benefits of the evidence, Due Process is satisfied." <u>United States v. Ziperstein</u>, 601 F.2d

281, 291 (7th Cir. 1979). Where the government has represented that it has complied

with its <u>Brady</u> obligations, a defendant's motion for such material may be denied as

moot. <u>See</u>, <u>e.g.</u>, <u>United States v. Alex</u>, 791 F.Supp. 723, 729 (N.D. Ill. 1992) (government's

promise to comply with <u>Brady</u> rendered defendant's motion moot); <u>United States v.</u>

<u>Dominquez</u>, 131 F.R.D. 556, 559 (N.D. Ill. 1990).

60.    In this case, the government is fully aware of it s <u>Brady</u> obligations and

intends to comply with them. The defendant's motion is nothing more than a request

for this Court to conduct a fishing expedition. Accordingly, the motion should be denied.

WHEREFORE, the United States of America respectfully requests that the defendant's pre-trial motions be denied.

Respectfully submitted,

JAN PAUL MILLER
UNITED STATES ATTORNEY

BY:      s/Timothy A. Bass_____
         TIMOTHY A. BASS, Bar No. MO 45344
         United States Attorney
         201 S. Vine St., Suite 226
         Urbana, IL 61802
         Phone:  217/373-5875
         Fax: 217/373-5891
         tim.bass@usdoj.gov

CERTIFICATE OF SERVICE


I hereby certify that on the 18th day of October 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Robert G. Kirchner
Kirchner Law Office
Suite 402
100 Trade Centre Drive
Champaign, IL 61820


s/Timothy A. Bass
TIMOTHY A. BASS
United States Attorney
201 S. Vine Street, Suite 226
Urbana, Illinois 61802
Phone:  217/373-5875
Fax: 217/373-5891
tim.bass@usdoj.gov

- 24 -