IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-20015 |
| ) | |
| MARSHALL BLANCHARD, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S SENTENCING COMMENTARY**

The United States of America, by its attorneys, Rodger A. Heaton, United States Attorney for the Central District of Illinois, and Timothy A. Bass, Assistant United States Attorney, respectfully submits its sentencing commentary. The government states as follows:

**Factual Summary**

1.  The defendant was charged in an indictment and convicted following a jury trial of knowingly manufacturing methamphetamine on or about December 30, 2004, in violation of 21 U.S.C. § 841(a)(1), and felon in possession of a firearm on or about December 30, 2004, in violation of 18 U.S.C. § 922(g)(1).

2.  The government's evidence at trial established the following.

3.  In 1978, the defendant was convicted of a felony offense in Illinois that was punishable by more than one year imprisonment.

4.  In 2004, the defendant owned two residences, one in Roberts, Illinois, and the other in Paxton, Illinois. The defendant lived at the Roberts residence with his son,

Marshall, Jr. Marshall, Jr. was a college student, majoring in criminal justice, and was somewhat familiar with what methamphetamine was and the process by which it was produced.

5. In the months preceding December 2004, Marshall, Jr. observed a noticeable change in the defendant's behavior. As Marshall, Jr. testified at a pretrial hearing and at trial, he observed a significant change in the defendant's mood and a loss of weight.

6. In November 2004, the defendant began associating with Cynthia Blanding and subsequently allowed Blanding to stay at his residence in Paxton. Between November and December 2004, Blanding observed and assisted the defendant with manufucturing methamphetamine at the Paxton residence. He provided part of the methamphetamine to Blanding. In addition, on at least one occasion, the defendant showed Blanding a handgun that he kept underneath his bed in his Roberts residence. As Blanding testified at trial, "he showed me a pistol, a firearm that he had underneath the mattress on his side of the bed where he slept." (Trial Transcript at p.455) Finally, on or about December 28, 2004, the defendant provided methamphetamine to another person in exchange for providing a tattoo to the defendant's daughter.

7. On or about December 29, 2004, Marshall, Jr. was at the Roberts residence and observed two unknown men come to the residence and go upstairs with the defendant and remain there for an extended period of time. The next day, Marshall, Jr. returned home and detected a strong chemical odor in the residence and observed

items consistent with the manufacture of methamphetamine. Marshall, Jr. took photographs of the items and a sample of a white powdery substance. He then provided these items to his mother, the defendant's ex-wife, and expressed concern to her about the defendant's actions. The defendant's ex-wife alerted a Roberts police officer and provided the officer with the sample of the white substance and photographs provided to her by Marshall, Jr. The white substance field-tested positive for ephedrine, a precursor for the production of methamphetamine.

8. On December 29, 2004, a Roberts, Illinois law enforcement officer obtained state search warrants for the defendant's residences in Roberts and Paxton. The issuance of the search warrants was largely based on information provided by the defendant's son. During the search of both residences, officers seized methamphetamine and numerous items directly associated with its manufacture. Those items are described in paragraphs 9 through 14 of the presentence report. Officers also seized several firearms at the Roberts residence. Included within the items seized at the Roberts residence was methamphetamine that was found on the nightstand in the defendant's bedroom and a .32 caliber handgun firearm that was found under the mattress of the defendant's bed.

9. Following the searches of the defendant's residences, the defendant was charged in Ford County, Illinois with the manufacture of a controlled substance and a warrant was issued for his arrest. As established at trial, the defendant later fled to Tennessee to avoid the charges and was ultimately arrested there on January 29, 2004,

and returned to Illinois. At the time of this arrest, the defendant had burns on his face that were consistent with burns associated with manufacture of methamphetamine.

10. Following the defendant's return to Illinois (and as reflected in the defendant's filings in this case on September 15, 2005), a preliminary hearing was conducted in Ford County on March 10, 2005.

11. On April 8, 2005, the defendant was indicted in the Central District of Illinois and charged with the above-mentioned offenses. During the grand jury hearing in connection with the return of the indictment, Marshall, Jr. testified concerning the defendant's actions and the events leading up to the searches at the defendant's residences in Roberts and Paxton.

12. On April 11, 2005, ATF Special Agent Dennis Fritzsche and a Roberts police officer arrested the defendant pursuant to a federal warrant. Following his arrest, the defendant made several incriminating statements concerning his possession of firearms seized from his residence.

13. On November 15, 2005, this Court conducted an evidentiary hearing on the defendant's motion to suppress. At the hearing, Marshall, Jr. testified on behalf of the defendant. As this Court found at the hearing, Marshall, Jr. testified falsely concerning the ownership and possession of the firearms seized from the defendant's residence and concerning the defendant's access to a porch area of his residence at the time the firearms were seized.

14. On December 12, 2005, this Court completed the evidentiary hearing on the defendant's motion to suppress. This Court granted the government's request to re-open the cross-examination of Marshall, Jr. Marshall, Jr. testified that his testimony at the previous hearing concerning his possession and ownership of the firearms found at the defendant's residence was false. He also testified that the defendant attempted to influence him to provide false testimony. This Court subsequently concluded that the defendant attempted to obstruct justice and revoked the defendant's bond.

### Defendant's Objections

15. The defendant has asserted objections to the presentence report concerning 1) calculation of drug quantity under USSG § 2D1.1; 2) an enhancement for possession of a firearm under § 2D1.1(b)(1); 3) an enhancement for substantial risk of harm to human life under § 2D1.1(b)(8)(B); 4) an enhancement for obstruction of justice under § 3C1.1; and 5) the lack of a minor role reduction under USSG § 3B1.2.

16. The advisory sentencing range calculated by the probation office is based on evidence presented at the defendant's trial and information from law enforcement reports relating to the offenses charged. The defendant has presented no evidence beyond mere denials in support of his objections. Although the probation office has adequately responded to the defendant's unsupported objections, the government states the following additional responses.

17. It is well settled that following <u>United States v. Booker</u>, 543 U.S. 220 (2005), sentencing courts continue to apply the Sentencing Guidelines under a

preponderance of the evidence standard to calculate an advisory sentencing range. United States v. Belk, 435 F.3d 817, 819 (7th Cir. 2006) (holding that defendants who claim a Booker error cannot ignore "the remedial portion of that decision, which concluded that judges may continue to make findings based on a preponderance of the evidence, provided that they do not treat the Sentencing Guidelines as 'laws' with binding effect" ); United States v. Robinson, 435 F.3d 699, 701 (7th Cir. 2006) ( "District judges must resolve disputed factual issues, determine relevant conduct by a preponderance of the evidence, and apply the appropriate sentence enhancements in order to compute the advisory guidelines sentence range." ). In advancing objections to the presentence report, a defendant "must produce more than a bare denial, or the judge may rely entirely on the [report]." United States v. Hawkins, 480 F.3d 476, 477 (7th Cir. 2007).

**Drug Quantity**

18.   USSG §1B1.3(a)(1)(A) provides that a defendant is accountable for "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant[.]"

19.   The defendant first objects to the drug quantity, asserting that he should not be accountable for the methamphetamine and related materials found at his Paxton residence. This objection is nothing more than a bare denial. Moreover, attributing the drugs found in the Paxton residence is based on the trial evidence, which established

the defendant's ownership of the residence and his association with Cyntania Blanding in manufacturing methamphetamine at that residence.

**Firearm Enhancement**

20.     USSG § 2D1.1(b)(1) provides for a two-level enhancement if the defendant possessed a firearm unless the defendant establishes that "it is clearly improbable that the weapon was connected with the offense." § 2D1.1(b)(1), comment., n.(3).

21.     Here, the defendant objects to the firearm enhancement based on the .32 caliber handgun found underneath a mattress in his bedroom. The defendant makes no attempt to establish that the firearm was not connected with the offense, but rather only attempts to re-argue whether he possessed that firearm. Once again, the defendant asserts merely a bare denial. Sentencing is not a place to re-litigate issues previously established at trial. Moreover, the evidence at trial established that the defendant possesed a .32 caliber handgun that was found underneath his bedroom mattress in close proximity to methamphetamine also found in his bedroom. This evidence is more than sufficient to support the enhancement.

**Substantial Risk of Harm Enhancement**

22.     USSG § 2D1.1(b)(8)(B) provides for a three-level enhancement if the offense "(i) involved the manufacture . . . of methamphetamine; and created a substantial risk of harm to (I) human life . . . or (II) the environment[.]" Application Note 20(A) to § 2D1.1 provides that, in determining whether the offense created a substantial risk of harm to human life or the environment, the court shall

include consideration of the quantity of chemicals and toxic substances found at the laboratory, the manner in which those chemicals and substances were stored and disposed of, the duration of the offense, and the extent and location of the manufacturing operation. See also United States v. Pinnow, 469 F.3d 1153, 1156 (8th Cir. 2006).

23.    In this case, the defendant objects to the enhancement, asserting primarily that the evidence does not support a conclusion that the offense caused his daughter to become ill. Putting aside that issue, however, and as stated by the probation office, the offense involved the manufacture of methamphetamine at two separate residences; several items associated with the manufacture were not properly disposed of and were allowed to remain at both residences; and the defendant's son testified at trial to the presence of an odor of ether at the Roberts residence. This evidence is more than sufficient to support the enhancement. See Pinnow, 469 F.3d at 1157.

**Obstruction of Justice Enhancement**

24.    USSG § 3C1.1 provides for a two-level enhancement for obstruction of justice if "(A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct[.]" Examples of such conduct include "unlawfully influencing a . . . witness[.]" § 3C1.1, comment., n.4(a).

25.     Here, the defendant objects to the obstruction enhancement, asserting that the evidence is insufficient to support it. Contrary to this unsupported claim, the evidence at the hearing on the defendant's motion to suppress and the government's motion to revoke the defendant's bond clearly established that the defendant unlawfully influenced his son to provide false testimony to this Court. The defendant's son so testified and this Court so found in granting the government's motion.

**Lack of Minor Role Reduction**

26.     Finally, the defendant objects to the lack of a minor role reduction under USSG § 3B1.2. That section provides for a two-level reduction in the offense level if "the defendant was a minor participant in any criminal activity[.]" § 3B1.2(b). A reduction may apply if there was more than one person involved in the offense, and the defendant was "substantially less culpable than the average participant." Id., comment., n.3(a).

27.     Here, the evidence at trial established that the defendant was involved with Cynthia Blanding in the manufacture of methamphetamine at the defendant's residences in Roberts and Paxton. There is no evidence to support a conclusion that the defendant was a minor participant in that activity, let alone evidence to establish that he

was substantially less culpable than anyone else.

                              Respectfully submitted,

                              RODGER A. HEATON
                              UNITED STATES ATTORNEY

BY:    s/Timothy A. Bass
           TIMOTHY A. BASS, Bar No. MO 45344
           Assistant United States Attorney
           201 S. Vine St., Suite 226
           Urbana, IL 61802
           Phone: 217/373-5875
           Fax: 217/373-5891
           tim.bass@usdoj.gov

CERTIFICATE OF SERVICE

      I hereby certify that on the 23rd day of April 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Robert G. Kirchner
Kirchner Law Office
Suite 402
100 Trade Centre Drive
Champaign, IL 61820

Scott Lerner
Lerner Law Offices
Suite 608
201 W. Springfield Avenue
Champaign, IL 61824

      s/Timothy A. Bass
      TIMOTHY A. BASS
      Assistant United States Attorney
      201 S. Vine Street, Suite 226
      Urbana, Illinois 61802
      Phone: 217/373-5875
      Fax: 217/373-5891
      tim.bass@usdoj.gov